UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRZYSZTOF BAJDO, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 11 C 1091 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| KIM BUTLER, Warden, ) | |
| Menard Correctional Center,[1] ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Petitioner Krzysztof Bajdo, who is currently incarcerated at Menard Correctional Center, is serving a thirty-five year sentence for first degree murder. Bajdo has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. The majority of Bajdo's claims are procedurally defaulted or not cognizable on federal habeas review. As for his ineffective assistance of counsel at sentencing claim, which the Court reaches on its merits, Bajdo has not demonstrated that the state court's decision was contrary to or an unreasonable application of clearly established federal law. The Court thus denies Bajdo's petition for a writ of habeas corpus.

**BACKGROUND**

The Court will presume that the state court's factual determinations are correct for the purposes of habeas review, as Bajdo has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The

---

[1] Kim Butler is presently the warden at Menard Correctional Center and is substituted as the proper Respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

1

Court therefore adopts the state court's recitation of the facts and begins by summarizing the facts relevant to Bajdo's petition.

I. **Bajdo's Trial and Conviction**

The following facts were established at Bajdo's jury trial: On October 11, 2003, Bajdo, Agnieszka Fulara, his girlfriend of three and a half months, and two other women went out to several nightclubs in Chicago, Illinois. Upon returning to Des Plaines, Bajdo first dropped off Fulara at her house and then dropped off the two other women. Suspicious that Fulara was cheating on him with her ex-boyfriend, Greg Schimscheiner, Bajdo then returned to Fulara's house to make sure she was still at home. Instead, Bajdo found her car gone and so decided to drive to the nightclub where Schimscheiner worked, where he saw Fulara parking her car. Bajdo approached Fulara and demanded that she not go into the club. After some argument, she agreed and the two drove away separately. They continued arguing on their cellular phones while driving until Bajdo asked Fulara to pull over so they could talk. Once parked, Bajdo entered Fulara's car. Their argument escalated, and at some point Fulara slapped Bajdo across the face. Their argument then subsided for a time only to again escalate after Fulara repeatedly denied having a romantic relationship with Schimscheiner. After Fulara stated she wanted to break up with Bajdo, Bajdo grabbed her throat and choked her until she became unconscious. He then retrieved a screwdriver from the trunk of Fulara's car and stabbed Fulara several times in the chest.

Leaving Fulara in her car, Bajdo took her cellular phone and the screwdriver and drove away. From Fulara's cellular phone, Bajdo sent text messages to Schimscheiner blaming him for what had just occurred. Bajdo then attempted suicide, colliding with a toll booth while driving at approximately 100 miles per hour. While in intensive care, he confessed that he killed Fulara

and consented to a search of his car, where the screwdriver was found. Fulara's body was found in her car on October 12th. Dr. Ponni Arunkumar testified that she concluded from the autopsy results that Fulara died of strangulation, with multiple stab wounds being a significant contributing factor. The evidence was conflicting on whether the stab wounds alone were fatal.

The State charged Bajdo with first degree murder. At the jury instruction conference, however, his counsel requested that the jury be given a second degree murder instruction. The State objected. The trial court declined to provide the instruction, finding insufficient evidence of a sudden and intense passion resulting from serious provocation. The trial court noted that Bajdo and Fulara were not married or engaged and that Fulara's slap did not constitute substantial physical injury, substantial physical assault, or mutual combat. The jury was thus only instructed as to first degree murder. Soon after beginning its deliberations, the jury sent a note to the trial court asking whether it could consider convicting Bajdo of a lesser charge. Over Bajdo's objection, the trial court responded in the negative, indicating that there was no other charge for the jury's consideration. The jury returned a guilty verdict.

At sentencing, the State requested that Bajdo be sentenced to forty-five years in prison. The State presented evidence of aggravation, testimony from a friend of Fulara's, and victim impact statements from Fulara's parents and another friend. The State also noted that Bajdo's demeanor at trial was cold, calculated, and unemotional. Bajdo's counsel argued in mitigation that Bajdo was only twenty-five years old, lacked a criminal history, and had finished high school in Poland, pursued further education here, and held down a steady job. Counsel also noted that Bajdo attempted suicide, suffering serious injuries. He introduced a statement from Bajdo's grandmother, in which she described Bajdo as a caring and loving grandson who helped her around the house and stated that his actions on October 11, 2003 were a complete departure

from his usual character. Bajdo made a statement. The trial court also had before it Bajdo's pre-sentence investigation report, which indicated that Bajdo was not then suffering from any physical health problems, had never been treated by a mental health professional, had never taken any psychotropic medication, and did not need to speak to a mental health professional. After considering everything before it, the trial court imposed a thirty-five year sentence.

## II. Direct Appeal

Bajdo appealed with the assistance of counsel, arguing that (1) the trial court erred in refusing to instruct the jury on second degree murder and (2) his sentence was excessive because his rehabilitative potential was not considered. As part of his argument that the trial court erred in refusing to instruct the jury on second degree murder, Bajdo also contended that the trial court improperly responded to the jury's question regarding whether it could deliberate on a lesser offense. On November 22, 2006, the Illinois Appellate Court affirmed Bajdo's conviction and sentence. Bajdo filed a petition for rehearing, arguing that the trial court erred in refusing to instruct the jury on second degree murder. The Illinois Appellate Court denied the petition for rehearing on January 4, 2007.

Bajdo then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, arguing that the trial court erred in refusing to instruct the jury on second degree murder and that the trial court improperly responded by answering the jury's question as to whether there was a lesser charge to consider in the negative. The Illinois Supreme Court denied the PLA on March 28, 2007. Bajdo did not file a petition for a writ of certiorari with the United States Supreme Court.

### III. State Post-Conviction Proceedings

Bajdo, with the assistance of counsel, filed a timely post-conviction petition pursuant to 725 Ill. Comp. Stat. § 5/122-1 on September 25, 2007. He argued that (1) trial counsel was ineffective for failing to interview, investigate, and call witnesses who could testify to Bajdo's mental health and medical condition, which would have impacted the existence of an affirmative defense; (2) trial counsel was ineffective for failing to investigate and raise Bajdo's mental health and medical condition as mitigation during sentencing; and (3) he was denied due process by the trial court's refusal to instruct the jury on second degree murder. On October 9, 2008, the trial court dismissed Bajdo's petition without an evidentiary hearing.

Bajdo appealed, arguing that the trial court erred in dismissing his petition without an evidentiary hearing because he had made a substantial showing that trial counsel was ineffective for failing to investigate and raise Bajdo's mental health as mitigation during sentencing. The Illinois Appellate Court affirmed the dismissal of Bajdo's petition on March 30, 2010. Bajdo filed a *pro se* petition for rehearing, which was denied on April 22, 2010.

Bajdo, proceeding *pro se*, filed a PLA, contending that (1) trial counsel was ineffective for failing to interview, investigate, and call witnesses who could testify to Bajdo's mental health and medical condition, which would have impacted the existence of an affirmative defense; (2) trial counsel was ineffective for failing to investigate and raise Bajdo's mental health and medical condition as mitigation during sentencing; (3) the trial court erred in refusing to instruct the jury on second degree murder; (4) the trial court improperly responded to the jury's question as to whether it could consider a lesser charge; (5) the trial court imposed an excessive sentence that did not consider Bajdo's rehabilitative potential; (6) the trial court erred in dismissing Bajdo's post-conviction petition because he made a substantial showing of ineffective assistance

5

of counsel at sentencing; (7) the trial court was biased; (8) the Illinois Appellate Court erred in failing to reduce Bajdo's conviction to second degree murder; and (9) the Illinois Appellate Court should have set aside the verdict because there was insufficient evidence to support a first degree murder conviction. The Illinois Supreme Court denied the PLA on September 29, 2010. Bajdo did not file a petition for writ of certiorari with the United States Supreme Court but timely filed his federal habeas corpus petition with this Court.

## LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407. Whether a state court's application of Supreme Court precedent is unreasonable is judged by an objective standard. *Id.* at 409; *Winston v. Boatwright*, 649 F.3d at 624.

## ANALYSIS

Bajdo has asserted nine grounds for relief: (1) trial counsel was ineffective for failing to interview, investigate, and call witnesses who could attest to Bajdo's mental health and medical

6

condition at trial; (2) trial counsel was ineffective for failing to investigate and raise Bajdo's mental health and medical condition as mitigation during sentencing; (3) the trial court erred by refusing to instruct the jury on second degree murder; (4) the trial court erred by responding to the jury's question as to whether it could consider a lesser charge in the negative; (5) the trial court imposed an excessive sentence that did not consider Bajdo's rehabilitative potential; (6) the trial court erred in dismissing Bajdo's post-conviction petition because he made a substantial showing of ineffective assistance of counsel at sentencing; (7) the trial court was biased; (8) the Illinois Appellate Court erred in failing to reduce Bajdo's conviction to second degree murder; and (9) there was insufficient evidence to convict Bajdo of first degree murder. Respondent argues that Bajdo has procedurally defaulted claims 1, 4, 5, 7, 8, and 9, that claims 2 and 3 are meritless, and that claim 6 is not cognizable and therefore cannot serve as a basis for habeas relief.

I. **Procedural Default**

A petitioner must fairly present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). To be "fairly presented," a claim must be brought forth on one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means appeals up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise that claim has subsequently passed, the claim is procedurally defaulted and not available for federal habeas review. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009).

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).

### A.     Claims Not Raised Through One Complete Round of State Court Review (Claims 1, 5, 7, 8, and 9)

Bajdo did not present claims 1, 5, 7, 8, and 9 through one complete round of state court review. Although he raised claim 1, that trial counsel was ineffective for failing to interview and present witnesses regarding his mental health and medical condition during trial, in his post-conviction petition, it was not included in his appeal of the dismissal of the post-conviction petition, which focused instead only on ineffective assistance of counsel at sentencing. Bajdo

8

raised it again in his post-conviction PLA, but the omission of the claim at the post-conviction appeal stage means that it is defaulted. Bajdo raised claim 5, that the trial court's sentence was excessive, on his direct appeal to the Illinois Appellate Court but not in his direct appeal PLA. He also raised it in his post-conviction PLA, but not with the trial or appellate courts on post-conviction review. Similarly, claims 7 (trial court bias), 8 (appellate court error in failing to reduce the conviction to second degree murder), and 9 (insufficient evidence to convict of first degree murder) were all first raised in Bajdo's post-conviction PLA but not presented to the lower courts for their review. Thus, these claims are procedurally defaulted.

  **B.**  **Fair Presentment of the Federal Basis of Claim 4**

  Bajdo presented claim 4, that the trial court erred by responding in the negative to the jury's question as to whether it could consider a lesser charge, through one full round of review. But Respondent contends that, to the extent the claim alleges a federal constitutional violation, it is procedurally defaulted because Bajdo did not alert the state courts to the claim's federal nature. A petitioner "must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984). This requires the petitioner to present his claim "in such a way as to fairly alert the state court to any applicable constitutional grounds for the claim." *Id.* This can be done, "for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004). In determining whether a petitioner has sufficiently alerted the state courts to the constitutional nature of his claims, the Court looks to whether the petitioner "(1) relied on relevant federal cases applying constitutional analysis; (2) relied on state cases applying federal

9

constitutional analysis to a similar factual situation; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; and (4) alleged a pattern of facts that is well within the mainstream of federal constitutional litigation." *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009).

Bajdo's presentation of this issue to the state courts was rather brief, as it was mainly a sub-issue encompassed within his argument that the jury should have been instructed on second degree murder (claim 3 here). To the extent it is encompassed by claim 3, it is addressed in this Opinion below. But to the extent it stands alone as a separate claim, Bajdo did not present it to the state courts as a federal claim. Bajdo did not rely on any federal cases, nor did the one state case he cited in support of this claim, *People v. Oden*, 633 N.E.2d 1385, 261 Ill. App. 3d 41, 199 Ill. Dec. 394 (1994), rely on a federal constitutional analysis. He does not frame his claim as a denial of due process or a constitutional violation. And Bajdo's reference in his PLA to the trial court's alleged "abuse of discretion" in answering the jury's question does not suffice to call to mind a federal constitutional right. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."). Thus, claim 4 was not fairly presented to the state court and is procedurally defaulted.

### C. Exceptions to Procedural Default

Bajdo can nonetheless proceed on his procedurally defaulted claims if he can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice. *Johnson*, 518 F.3d at 455–56. But Bajdo does not set forth any argument on either point, having failed to file a reply to Respondent's answer. The Court,

therefore, cannot consider his defaulted claims. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008).

## II. Non-Defaulted Claims

### A. Ineffective Assistance of Counsel at Sentencing (Claim 2)

Bajdo contends that his trial counsel was ineffective for failing to interview, investigate, and call witnesses who could attest to Bajdo's mental health and medical condition for purposes of mitigation at sentencing. Respondent argues that the Illinois Appellate Court's decision on the merits of his ineffective assistance claim was not contrary to or an unreasonable application of clearly established federal law.

In order to establish constitutionally ineffective assistance of counsel, Bajdo must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In considering the first prong, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and may not let hindsight interfere with its review of counsel's decisions. *Id.* at 689. As for prejudice, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To show prejudice with respect to his sentence, Bajdo must show that but for counsel's errors, "there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010). That probability is determined by evaluating "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding" and "reweig[hing] it against the evidence in aggravation." *Porter v. McCollum*, 558 U.S. 30, 41, 130 S. Ct. 447, 175 L. Ed. 2d 398 (2009) (quoting *Williams*, 529 U.S. at 397–98). The Court need not address both prongs of

11

the *Strickland* test if one provides the answer; that is, if the Court determines that the alleged deficiency did not prejudice Bajdo, it need not consider the first prong. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014).

The Illinois Appellate Court affirmed the trial court's dismissal of Bajdo's post-conviction petition on two grounds. First, the court found that Bajdo's petition and supporting documentation was procedurally deficient and thus failed to comply with the requirements of Illinois' Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-2. Second, the court found that Bajdo had not made a substantial showing that his trial counsel was ineffective under *Strickland*. After setting forth the *Strickland* standard for prejudice, the Illinois Appellate Court considered the evidence Bajdo claimed would have been mitigating in connection with the evidence that the trial court had before it in making its sentencing decision. The court determined that the trial court's stated reasons for imposing the sentence demonstrated that Bajdo's mental health history would not have altered the sentence Bajdo received. The court noted that information regarding a defendant's mental health is not inherently mitigating, that Bajdo did not indicate in his post-conviction petition what a psychological evaluation would have revealed or how he was prejudiced by a lack of an evaluation, and that Bajdo did not claim that his current mental health impacted his fitness or sanity. In concluding that counsel's inquiry into Bajdo's mental history would not have made a difference to Bajdo's sentence, the court also noted the trial court's statements that it "took . . . into account" Bajdo's attempted suicide and that "he was not totally mentally balanced." Ex. J at 7.

When the last state court to consider a petitioner's federal claim resolves the claim on an independent and adequate state ground, such as failure to comply with a state procedural rule, the Court may not reach the federal claim on federal habeas review. *Miranda v. Leibach*, 394 F.3d

984, 991–92 (7th Cir. 2005). "[I]n order to foreclose review on habeas, the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative." *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998). The Illinois Appellate Court's decision was based on both procedural and substantive grounds, with no explicit language that its discussion of the substance of Bajdo's ineffective assistance of counsel claim was merely in the alternative. *See* Ex. J at 6 (using "furthermore" to introduce its discussion of *Strickland*). Thus, the Court may address the merits of Bajdo's claim.[2] *Jenkins*, 157 F.3d at 491 (reaching merits of claim where there was no "clear statement of intent by the state court" to rely on procedural default and to reach the merits of the federal claim only in the alternative); *cf. Romero v. Battles*, 234 F.3d 1273 (Table), 2000 WL 1206691, at *3 (7th Cir. 2000) (claim procedurally defaulted where state court prefaced analysis by stating "even if we considered the merits"); *Stevenson v. Gaetz*, No. 11 C 4394, 2013 WL 1385557, at *3 (N.D. Ill. Apr. 3, 2013) (claim procedurally defaulted where state court prefaced discussion of merits by stating "assuming, arguendo, that defendant had not [forfeited the claim]" (second alteration in original)); *United States ex rel. Wyatt v. Atchison*, 920 F. Supp. 2d 894, 898–99 (N.D. Ill. 2013) (habeas review precluded where state court addressed merits with preface "[w]aiver notwithstanding" (alteration in original)).

Having concluded that the Illinois Appellate Court's decision is reviewable on the merits, this Court must apply a "doubly deferential standard" in reviewing Bajdo's claim. *Burt v. Titlow*, --- U.S. ----, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013) (quoting *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011)). Bajdo has failed to show that the

---

[2] Moreover, because procedural default is an affirmative defense, and Respondent did not argue that Bajdo's ineffective assistance of counsel is barred by the independent and adequate state ground doctrine, to the extent that doctrine would apply, Respondent has forfeited the argument. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591–92 (7th Cir. 2010); *Perruquet v. Briley*, 390 F.3d 505, 519 (7th Cir. 2004).

Illinois Appellate Court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law. The Illinois Appellate Court properly considered the totality of the mitigation evidence Bajdo identified in his post-conviction petition in connection with that produced at his sentencing hearing and weighed the mitigation evidence against the evidence presented at sentencing in aggravation. *See Porter*, 558 U.S. at 41. It then concluded that further information regarding Bajdo's mental health history would not have altered the sentence the trial court imposed, considering the brutality of the crime and the fact that the trial court already took into account Bajdo's mental condition. This conclusion was not an unreasonable one. *See Richardson v. Lemke*, 745 F.3d 258, 276–77 (7th Cir. 2014) (although not every jurist would agree with conclusion that additional evidence regarding petitioner's mental health would not have changed petitioner's sentence, the conclusion was not unreasonable).

### B. Dismissal of Post-Conviction Petition (Claim 6)

Bajdo separately contends that the trial court erred in dismissing his post-conviction petition because he made a substantial showing of ineffective assistance of counsel at sentencing. Respondent maintains that Bajdo's claim regarding the dismissal of the post-conviction petition is not cognizable because it merely challenges the application of state law and does not raise a constitutional issue. The Court already addressed whether the Illinois Appellate Court's substantive decision with respect to Bajdo's ineffective assistance claim merits habeas relief. To the extent Bajdo is challenging the application of the Post-Conviction Hearing Act to his post-conviction petition, that claim is not cognizable on federal habeas review. *See Johnson v. Acevedo*, 572 F.3d 398, 402 (7th Cir. 2009) ("A violation of state law is not the basis for federal collateral relief."); *United States ex rel. Anderson v. Hardy*, 779 F. Supp. 2d 816, 825 (N.D. Ill. 2011) (claim that state post-conviction trial court erred in dismissing post-conviction petition was not cognizable on federal habeas review because it involved the application of state law).

14

## C. Second Degree Murder Instruction (Claim 3)

Bajdo contends that he was denied due process because the trial court refused to instruct the jury on second degree murder. Respondent argues that no clearly established federal law requires such an instruction. In *Beck v. Alabama*, the Supreme Court held that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a state] is constitutionally prohibited from withdrawing that option from the jury in a capital case." 447 U.S. 625, 638, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). *Beck*, however, left open the question of whether the Due Process Clause requires that such instructions be given in a noncapital case. *Id.* at 638 n.14. As a result, the Seventh Circuit has concluded that, "in a noncapital case, there is no clearly established Supreme Court precedent" that would establish a defendant's right to a jury instruction on a lesser offense. *Calloway v. Montgomery*, 512 F.3d 940, 944 (7th Cir. 2008). Additionally, in *Hopkins v. Reeves*, the Supreme Court held that state trial courts are not constitutionally required to instruct juries on offenses that are not lesser included offenses of the charged crime under state law. 524 U.S. 88, 90–91, 96–97, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998). In Illinois, second degree murder is not considered a lesser included offense of first degree murder. *People v. Wilmington*, 983 N.E.2d 1015, 1026, 2013 IL 112938, 368 Ill. Dec. 211 (2013); *People v. Jeffries*, 646 N.E.2d 587, 595, 164 Ill. 2d 104, 207 Ill. Dec. 21 (1995). Thus, Bajdo was not constitutionally entitled to a second degree murder instruction. *See United States ex rel. Leyva v. Walls*, 230 F. Supp. 2d 847, 854–55 (N.D. Ill. 2002). Because federal habeas review is limited to issues of compliance with federal law, this claim is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

For the reasons stated above, the Court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this Court's rulings debatable. *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack*, 529 U.S. at 484–85)). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Bajdo's petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254 is denied and the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Dated: March 24, 2015

SARA L. ELLIS
United States District Judge